Saul Moskoff, J.
The law in the somewhat newly developed area relating to the education of handicapped children at public expense appears to be fluid and flexible, due in no small measure to the ambiguous and unclear statutory recitation of the rights of handicapped children and the responsibilities and obligations of their parents and governmental and educational authorities. (Matter of Daber, 71 Misc 2d 303; Matter of Leitner, 40 AD2d 38, 42.) In the instant matter two questions are presented, one having been settled by stare decisis, the other of novel impression.
The petitioner seeks reimbursement for tuition and maintenance of the subject child at a residential facility during the regular school year and for tuition at what is described by petitioner as a "summer school” and by the City of New York as a "summer day camp” program.
No issue is raised as to the handicap of the child or to the nonavailability of a public educational facility suitable for the needs of the child. Nor does the petitioner contend that he does not have the financial means to provide fully and adequately for the maintenance of the child, including food, lodging and clothing. Indeed, his ability to do so was stipulated at the hearing.
The petitioner contends that the cost of maintenance is an integral part of the educational process and is not chargeable to the parent of a child as a matter of law and that to impose such costs upon him is violative of the due process and equal protection clauses of the Constitution. Since this is the ques *93 tion here presented which this court finds to have been determined by stare decisis, we will dispose of it summarily.
Despite the nuances of distinction attempted to be drawn by petitioner, the issue has been resolved adversely to petitioner’s contention in Matter of Claire (44 AD2d 407, mot for lv to app dismd 35 NY2d 706), Matter of Logel (78 Misc 2d 394), and Matter of Charilyn N. (46 AD2d 65).
We repeat what we stated in Matter of Logel (supra, p 397): “It would thus appear from the general sense of statutory law that our legislators intended to and did impose upon our community the basic obligation of providing an education at public expense for every child, rich or poor, well or ill, normal or handicapped. The indication is equally clear that they intended to impose upon the parent the basic obligation to provide for food, lodging, clothing and other necessaries for the child, subject, however, to special consideration for blind and deaf children.”
The alleged constitutional infirmities to the imposition of maintenance costs were rejected in both Claire and Logel and this court reiterates that a parent, able to do so, may be required to pay all or part of the cost of maintaining a handicapped child at an appropriate school.
A more vexatious and viable question, not heretofore judicially determined in any reported decision except as to Matter of Wonsor (35 NY2d 701) is presented by the second question.
The child involved has been medically diagnosed as suffering from "Organic Brain Syndrome with Mental Retardation”. As a supplement to his special education during the regular school year, he attends a summer session at the Samuel Fields Camp of the Y.M.H.A. in an outdoor education program. A supervising social worker for the camp testified that "Ronnie” works with a group in an outdoor setting with a view to teaching him to develop a relationship with his peers, and to work independently. He stated that "Ronnie” had in fact developed a relationship with one or two other children at the camp, had become less self-related and had taken advantage to his advantage of a less structured setting.
He pointed out that while nonhandicapped children attended the camp, they engaged in separate programs and were not integrated with the handicapped children. While treatment plans were not utilized for nonhandicapped children at the camp, children in Ronnie’s category were the subjects of *94 treatment plans and received special reading programs not available to the nonhandicapped children.
An acknowledged expert in the treatment and development of education and behavior modification programs for brain injured and emotionally disturbed multi-handicapped children testified that such a child requires education on a 12-month basis and that to interrupt the child’s program for a two-month period in the summer would cause regression.
The city offered no proof to controvert the petitioner’s claim of the need for special education of the child on a 12-month basis.
The resolution of the question presented appears to hinge on the issue whether "summer school” or "day camp” attendance is a necessary "educational” expense for a handicapped child or whether it is in the nature of an extra benefit, not related to the educational needs of the child and therefore chargeable to a financially able parent.
The Corporation Counsel argues that to afford the summer privileges and to extend the education period to 12 months for handicapped children would provide advantages for handicapped children not enjoyed by nonhandicapped children and that the board of education is required to furnish to a handicapped child only "adequate”, not "superior” or "superlative” education services.
The fallacy in this argument is that Ronnie’s attendance at the summer session at the Y.M.H.A. program is, as this court finds, not for recreational or custodial purposes, but rather as an extension of his educational process. Moreover, education is provided in accordance with the individual needs of the child, even among non handicapped children, thus permitting some to enjoy privileges not extended to others. For example, some children in the regular public schools who fail subjects may be permitted to attend summer sessions to "make up” failed courses; some children who may be classified as retarded developmentally may be assigned to C.R.M.D. classes in special public schools where class size may be substantially smaller than in regular public schools; some children with reading limitations may be assigned to special classes and programs for remedial reading; some children with special aptitudes or who have been found to be unsuited for academic programs may be assigned to vocational schools; some children with artistic talents may be assigned to such schools as the High School of Music and Arts and finally some children who *95 demonstrate exceptional ability may be selected for entrance to such schools as Bronx High School of Science, Brooklyn Technical High School or Stuyvesant High School.
While Matter of Claire (44 AD2d 907, supra), did not deal with the precise issue here involved, the decision there, by its language, seems dispositive albeit in the nature of obiter dicta. The Appellate Division, First Department, by Lupiano, J. stated (p 409): "Respondent City of New York concedes under this appeal that the Family Court should not have denied tuition costs for the months of July and August, 1973, and should have allowed the application for maintenance with a determination of the financial ability of the petitioner parent to contribute to such maintenance. The authority of the Family Court to make a !suitable order’ whenever a physically handicapped child, within the jurisdiction of the court and under the provisions of the act, appears to be in need of educational service, is not limited by the boundaries of the conventional school year of September through June. The criterion is the special need of the child (Family Ct Act §§ 233 and 234).” (Emphasis supplied.)
Matter of Wonsor (35 NY2d 701, affg 42 AD2d 1056 , supra) may be construed at first blush as being decisive on the question of the right to summer camp reimbursement.
The appeal there was from an order of the Family Court directing the City of New York to pay the sum of $1,100 to allow the handicapped child to attend a special summer camp. The Appellate Division affirmed the Family Court order. The Court of Appeals, in affirming, stated (pp 701-702): "At the hearing, respondent corroborated rather than contradicted petitioner’s evidence. This posture accounts in part for the present state of the record, which is too sparse and undeveloped to properly present the substantive issue tendered in this unduly delayed appeal. ” (Emphasis supplied.)
This court has ascertained, dehors the record, that in Wonsor a serious question existed as to whether the Corporation Counsel, in effect, had consented to the order for reimbursement for special summer school expenses. The affirmance by the Court of Appeals may well have turned upon such indication of consent.
This court concludes that the petitioner is entitled to reimbursement for tuition, but not maintenance, at the residential facility for the period involved in this proceeding and to *96 reimbursement for participation in the summer program at the Samuel Fields Y.M.H.A.